# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |  |
|---|---|---|
| **Larry S. Bassett** | ) | |
| SSN / ITIN: xxx-xx-2667 | ) | |
| **Karen J. Bassett** | ) | |
| SSN / ITIN: xxx-xx-7513 | ) | Bankruptcy Case No. 19-22023 |
| 10282 Sheep Road | ) | Chapter 7 |
| Pittsburg, Texas 75686-7025 | ) | |
| (Bankruptcy Petitioners) | ) | |

## Motion To Lift The Automatic Stay

### 14-DAY NEGATIVE NOTICE - LBR 2004(a):

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading *WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE* shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court serves the right to set a hearing on any matter.**

# Preface

Bruce Marshall and Jeanine Weir hereby Motion Honorable Chief Judge Bill Parker to lift the

Automatic Stay against our Federal Civil Lawsuit filed in the District of Vermont 5:18-cv-196

against Larry and Karen Bassett, formerly of Vermont,  the present petitioners for Bankruptcy,

(for Fraud of various types, consumer fraud, accounting fraud, fraudulent concealment, fraudu-

lent deception, fraudulent  misrepresentation, breach of contract, breach of covenant of good

faith, breach of fiduciary duty, professional negligence, malpractice, unjust enrichment, prom-

issory estoppel, aiding and abetting fraud, accomplice to fraud, aiding and abetting breach of

fiduciary duty, joint and several liability for fraud and general tortious activity) who are the

present Petitioners for Bankruptcy, seeking to discharge their considerable debt to us which was

gained by fraudulent means, and now are utilizing the Bankruptcy process as a getaway car for

their fraud. Yet debts incurred through fraud are not dischargeable in bankruptcy, as we warned

the Bassett's in a hearing in Vermont with Judge Jeffrey Crawford, as in response to Crawford's

inquiries the Bassett's said that they had already retained counsel for such filing and were con-

sidering it.


I note that the judge told the Bassett's they needed to inform the court if they should so file, so

the Court of original jurisdiction would be notified, and the Judge pointedly making this Order

establishes and shows the primacy of the District Courts relative to Bankruptcy Courts 28 USC

1334 (a) as way of a formality with implications relative to our present predicament, where the

District Court of Vermont is still relevant as further demonstrated by being present on the Bank-ruptcy Petition Matrix.

Being on the Matrix, under the Honorable Judge Crawford's order to be told when such a peti-tion might be filed, provides an understanding that the Petitioners are also the Defendants in a law suit in District Court. Thus our Civil Complaint, is in essence a part of the record, being properly established in the District Court of Vermont on November 19th 2018, before the Statute of Limitations would have run out and we would lose our legal rights as regards the money that Mr. Bassett said he lost, and gained through fraud.

Our Motion here is rooted in that relevant to upholding the principle of justice, as concerns the lifting of the Automatic Stay 11 USC 362 (d).

In outlining those causes and legal facts relevant to a properly warranted granting of a Lift of the Automatic Stay, we shall invoke 11 USC 362 (o), which is the small letter, O, to which we said 'oh' in discovering the wisdom of the framers of these Statutes, where 11 USC 362 (o) confirmed our very civic realization, that these Statutes provide citizens with the means to defend their Rights,  Rights which we have cited, in a living witnessing of the wisdom of our nation's found-ing documents.  Precisely it is 11 USC 362 (o) which specifically states: **"The exercise of rights not subject to the stay...shall not be stayed by any order of a court or administrative agency under this title."**

Thus the Statute at play here, which we so recognize, contains, as we hope to outline, a means

whereby we might delineate Jurisdiction, by advancing relevant cause as well with the caveat of

inalienable rights, that the serious nature of this request might be properly regarded, for we do

not intend to let this Court be used by the Petitioners to further victimize ourselves and others.

Thus we proceed with this that we might have due process that is our right and is being threat-

ened by the proceedings of this Bankruptcy Petition process by those who defrauded us

## Towards

Rather than to defend their Answer to the Court, a "general denial of allegations" with "assump-

tion of risk as an affirmative defense", to which the onus of proof is with them, the Bassett's

have chosen to file for Bankruptcy instead, where should they be granted a discharge, then they

would be getting away with what they wanted in the first place, to defraud us and all the in-

vestors, in paying less than pennies on the dollar or nothing (as the Bassett's and their lawyer are

still seeking to have their only disclosed assets declared exempt from being divided amongst

creditors; in the 2nd Creditors Meeting after so much had been admitted they still sought this

which is brutal consciencelessness and is another level of their fraud and misrepresentation, as

they spent so much time since February 2017 telling us and other investors how they were com-

mitted to our repayment and were going to work so hard for it, yet there have been no serious

efforts on their part, no many times promised checks and repeatedly promised business plans

ever arrived and much in concealed assets, fraudulent conveyance, etc that should have been di-

vided among investors, legally, contractually and ethically, but was not, has unfortunately oc-

curred.) Larry had sent us Rule 26F information that they fancied on a simple sheet, and right

when information from initial subpoenas was due and we had sent Larry and Karen information

regarding this process and an agreement we also requested they sign, under rule 26F agreements/

conferencing needs, to complete such requirements, an "Agreement For Preservation Of Evi-

dence And Discoverable Information As Per Rule 26 F Conference" (See **Exhibit A**, document

of February 8, 2019), and soon thereafter Larry informed us they had filed for bankruptcy. If one

looks at that document and the situation as a whole, things can be inferred here through extrinsic

factors and evidence, that they sought the avoidance of this all (subpoena/discovery information

and our suit in general) through their filing.


Being told by a friend that she had been invested with Larry for 15 years with good returns led us

to him and it did seem quite good for awhile. Yet it started a very traumatic time for us when in

February 2017 Mr. Bassett announced that he had "lost" all of our money, (admitted he had been

reporting gains in trading while he was actually losing and kept throwing money into trading to

try to regain from losses without the investors knowledge or consent until it all was "lost".)

$197,000 in original principle I gave him, upon which he reported earnings that brought that

amount up to $238,198 (**as of November 2016**) that he contractually owed me, to which he

signed promissory notes for this amount in March 2017. Yes, both the Bassett's had long told us

and other investors that they wanted and were committed to paying us back, a story that contin-

ued even after they were served with our Court Complaint, when both Larry and Karen sent

emails saying again that they wanted to pay us back, that they had never thought of not paying us

back (see **Exhibit B**) and then the reality of their official Response to the Court, their "Answer"

revealed again their true motive, something very different and in contradiction to that, and in line

with their caustically and intentionally negligent and deceitful behavior toward us in which their

responsibilities to us and the other investors was never taken seriously. In pleading "denial of

allegations" and "assumption of risk as an affirmative defense" they were stating that it was all

our fault that we lost our money, that we had assumed the risk and were saying that they were not

beholden to repaying us. There was no clause on our original contract freeing Larry from culpa-

bility if he "lost" our money, no disclaimer at all.  They were and are valid contracts. As a CPA

owing investors well over a million dollars total from fraud, one does not raise a few puppies,

mow a few lawns and clean a few houses and expect to pay off such debt, something Larry well

knows. Someone serious in such a situation does not avoid returning phone calls and when one

does talk on the phone gloss over business concerns with vague generalities and scurry off in a

hurry. In such a situation it should have been the Bassett's pursuing us to explain their genuine

business plans that had hope of reaping the 5 year mark they had originally put forth, that they

thought they could pay everyone off in 5 years of hard work, though they said, "maybe it'll take

somewhat longer."


We have been severely hurt by this fraud of the Bassett's and cannot have our legal standing de-

stroyed, a legal standing that we took so much time, effort and expense to file in Federal Civil

Court, Pro Se, in order that we might protect ourselves before the Statute of Limitations ran out.

We filed this civil suit for fraud in our home state of Vermont where we live and where the Bas-

sett's also lived for a long time and when the worst and core part of the fraud occurred, until they

fled to Texas to evade their responsibilities to us and we have the right in our home jurisdiction

of Vermont to have equal protection of the laws and a trial on the merits of our case. We were

told three months ago that the Texas FBI had decided that jurisdiction for this case is in Vermont,

since the core/meat of the fraud occurred in Vermont (although it has been an ongoing, continu-

ing fraud, the worst did occur here) and thus they told us they were referring the case to the Ver-

mont/Albany, N.Y. division of the F.B.I. Likewise it is apparent that we as Vermonters who en-

dured the worst of the deliberate egregious defrauding of the Bassett's here in Vermont, when the

Bassett's also lived here, that jurisdictionally we have the right to our civil case in Vermont. Hav-

ing experienced such deliberate grievous exploitation, intentional defrauding by the Bassett's and

having spent an unbelievable amount of time and energy in more than full time work for well

over a year and a half seeking the return of funds we cannot afford to lose (in intensively study-

ing the law, talking to lawyers, private investigators and many others, in trying to be our own

counsel and investigators as we cannot afford otherwise), and the loss of our Vermont court case

would put us at a further disadvantage that is not acceptable or lawful under the documents of

our founding fathers.

**In the Bill of Rights, 14th Amendment, Section I** *"All persons born or naturalized in the Unit-
ed States and subject to the jurisdiction thereof, are citizens of the United States and of the state
wherein they reside. No state shall make or enforce any law which shall abridge the privileges or
immunities of citizens of the United States; nor shall any state deprive any person of life, liberty
or property, without due process of law; nor deny any person within its jurisdiction the equal
protection of the laws."*

In order to understand the case with the Bassett's, our Vermont Court complaint (which we made

very detailed with copies of cashed checks, contracts, etc, for our own protection) needs to be

read in full, to understand the level of malicious abuse and premeditated disenfranchisement

from the Bassett's, and the two Creditors Meetings that took place need to be listened to, as the

Bassett's admitted much under oath that validates the veracity and factualness of our Court com-

plaint. Larry was a day trader with a small pool of people and he admitted under oath that he had

been giving investors false earning reports of gains, verbally and in writing, and that false IRS

1099 INT reports of earnings were given investors as well, that he was fabricating things as such,

while he was in fact losing in trading, and continued this (without investors knowledge or con-

sent) until all the investors money was "lost". Larry also admitted under oath that he had been

losing in trading before we ever invested with him, and thus that his original pre-investment

claims to us of his average record of earnings (13-15%, with low risk, conservative trading mea-

sures employed) in trading was not accurate and was deliberately deceptive. (Which is fraudulent

inducement.) This was admitted under oath, under penalty of perjury, and all of it amounts to

various types of fraud and other things as well. Larry was in large part trusted by us, as well as

other investors we have talked to, as he had been CPA for Middlebury College, a very well re-

garded prestigious school in Vermont. (& he was also trusted due to his connection to and seem-

ingly safe trading record with, friends and for other investors, with family. As investor Jewel

Hutson told us, she trusted Larry, {besides for his having been a CPA for Middlebury College},

she trusted him as he had always returned investment funds to her daughter upon request and he

was "kinfolk.") Larry at the Second Creditors Meeting was unremorseful in discussing why he

had felt entitled to doing this to investors and to his bankruptcy  discharge, his sought erasing of

all responsibility to repay investors, (as the Bassett's have long promised), in saying that he had

given false earning reports and falsified IRS 1099 INT's to investors, and he justified it to him-

self that these were loans from investors and he was intending to repay investors, to make the

money back in the future, is how he said he justified it to himself that he was falsifying these reports. He was saying in essence that since people had loaned him the money to trade with, and he was trying to make back his losses in trading, that it's ok he did not inform investors about what was really happening with his trading, was not honest and gave false reports, that he was entitled to doing what he wanted with our money and giving false tax reports etc, as it was a loan, and so essentially what it comes down to for Larry is, we all took this risk in giving  him  a loan and we are going to have to just accept the loss as within the normal course of loaning money to someone, that it's alright for him to steal, is what in essence he said and meant, his general logic and justification.

This was reminiscent of the Bassett's official "Answer" in response to our Court Complaint, "assumption of risk as an affirmative defense."  Yet no, Larry as a CPA and professional entrusted with funds we and other investors we have spoken to could not afford to lose, who counted on basic ethics, fair dealing, honesty and equitable treatment, had a fiduciary duty and contractual obligations (from written and verbal contracts) to which he is beholden. One cannot just make up fake IRS 1099's and false earning reports (which people pay taxes on and count on income reported as they count on any income reported and promised in life) and then walk off and say "It was a loan and I was trying to make it back so I could do what I wanted." There are professional and ethical standards and **debts incurred from breach of fiduciary duty are also not dischargeable in bankruptcy filing** and there must be no discharge granted here. & again, the Bassett's admitted and made crystal clear under oath that Larry had been having losses in trading long before we ever originally talked to him about his trading and he had told us he averaged

9

earnings of 13-15%, that this had been his long time record, and that he had a low risk, conservative trading approach with stop loss orders to protect from losses etc, and thus we invested with him. "This is my families money, I would not risk it", Larry had told us. This is fraudulent misrepresentation and fraudulent inducement, prior to our ever investing, and they likewise in the same manner deceived other investors as well and are legally entitled to no level of discharge.

**Bill of Rights 4th Amendment: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."**

If Larry and Karen Bassett were to be allowed to discharge their debt to us and other investors through bankruptcy, this would be in effect a seizure of property, fraud enabled and allowed by the government, and if we were to lose our Federal civil court case that we already put so much into as Pro Se litigants, in our home state where the Bassett's lived and the worst and core part of their fraud was perpetrated, this would also be a seizure of its own sort, an enabling and allowing of the fraud of the Bassett's to act further in malicious bad faith and intent to deny us our rights of due process, trial on the merits and the funds we are legally owed.

The case with the Bassett's involves **non core issues** of civil fraud and **requires much investigation**, it is a very detail laden situation with many details to be assessed and a serious fraud with serious obligations going back over 15 years. The limited scope of bankruptcy court, which only looks back a year, 90 days, maybe 2 years or so, is totally inappropriate and is the wrong jurisdiction for this case. This needs to be thoroughly and fully investigated by the FBI etc and eventually needs to go to Grand Jury. Nothing else is appropriate here. **We gave the Bassett's a**

**chance for a long time and gave them much leeway, tried to be kind and merciful and support them in making a shift and getting busy with actual genuine work meant to repay investors, yet they have made unfortunate choices that are their own doing.**

Our claims are state of Vermont and Federal claims in the U.S. District Court of Vermont that do not invoke a substantive right under the Bankruptcy Code and they could have proceeded in Vermont District Court had there been no bankruptcy filing by the Bassett's. We have non core issues and claims that can not proceed to judgement in the Bankruptcy Court, absent the litigants' consent, and we do not give this consent. We want a jury trial on the merits of our case in Vermont.

**28 U.S. Code § 157. Procedures**
**(c)**
**(2)** Notwithstanding the provisions of paragraph (1) of this subsection, the district <u>court</u>, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under <u>section 158 of this title</u>."

We do not consent to this, we want a jury trial on the merits or Summary Judgment in Federal District Court in Vermont.

**Amendment 13: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."**

We include this, not to belittle or downplay the horror of actual literal slavery, but to point to the level of involuntary servitude to the Bassett's we have felt we are under, in having to work so very hard to the point of utter exhaustion the past two years simply for the return of funds that

are already ours. Yes we are free people and grateful for that yet with Larry and Karen it has

been in effect a level of servitude, a servitudal slavery to fraudsters. We are owed the return of

our Vermont suit and the deliberate callous infliction of emotional distress and the difficult, ex-

hausting level of nonstop work to recoup our funds that the Bassett's have brought us to through

their consciously perpetrated intentional deceit and disenfranchisement, is also a violation of this

amendment, and further cause for the restoration of our Vermont suit with the trial on the merits

that is owed us.


Further, since the Bassett's both admitted under oath to what is, legally, fraud (of many types),

and in terms of Larry especially and particularly, what is legally breach of fiduciary duty (to-

wards us and all the investors) and they admitted that this, which legally is securities fraud and

fraudulent misrepresentation etc, goes back many years, prior to numerous people ever investing

with him (who invested from Larry's fraudulent misrepresentations.) Therefore the Bassett's are

entitled to no level of discharge, legally they cannot have their debts to investors discharged,

legally Larry has committed crimes, a felony no less, and has admitted to serial prevarication and

legally thus we are owed the restoration of our Vermont suit, for the stay to be lifted.


**Also, 11 U.S.C. 727(a)(2) (1988) "This paragraph provides that the debtor cannot receive a
discharge if:**
**The debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate
charged with custody of property under this title, has transferred, removed, destroyed, mu-
tilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or
concealed-**

**(A) Property of the debtor, within one year before the date of filing of the petition; or**
**(B) property of the estate, after the date of filing of the petition."**

Yes, the debtors did violate this statute, as they were contractually bound to repaying us all they owe us, from our original contracts and the May 15, 2017 contract, which itself had provisions for an escrow to be set up out of which all investors were to be paid; all paid was to be divided and kept account of through this escrow (which did not happen and no one has been paid since 5/2017) and their mineral holdings were concealed from and held back from investors, the profits from which should have been divided and paid to us or they should have been sold and the profits divided, from the sale, neither of which was done. They could and should have done this long ago and certainly within the last year, they were legally obligated to. (& now the Bassett's and their lawyer are still trying to have these assets claimed exempt from division to creditors, as was said at the 2nd Creditors Meeting.) This has all been a continuation of the fraud of the Bassett's. We have not had the discovery yet to know what further may have been received by Karen when her mother died in November 2018. & there is much fraudulent concealment, fraudulent conveyance and fraudulent misrepresentation that goes back earlier than a year ago (see our court complaint and there is much more), in a fraud going back considerably in time, and again bankruptcy court is the wrong jurisdiction for this case with significant non core issues and involving serious crime; we do not accept this jurisdiction. We both are dealing with lyme disease, Jeanine's quite serious, and we cannot be forced to deal with Texas court, beholden to running there, being further burdened by the cost of mailing out motions etc to all on the matrix list and being put at such an overall disadvantage **when we already have had a suit in our home state**. This is the disadvantage the Bassett's wanted for us and it is not right.

Further, besides in terms of our own personal case, we must be clear that we contest bankruptcy court having jurisdiction in this case at all, for all the reasons we have outlined in this motion, it is the wrong venue generally and if we have the stay lifted for our case, receive a court judgement and yet other investors (like Jewel Hutson, who has been so hurt by this) still had Larry and Karen's legal responsibility to pay them back, erased, it would be very upsetting to us and further trauma from the Bassett's that we would experience as well, it would be so not right and an enabling of crime. After all admitted under oath and all the perjury etc, which this motion overall points to clearly, we should not have to fight for this. Also, after Creditors Meetings Larry and Karen told different family member investors that they were going to try harder to pay them back, that they would try to do it (meaning after they received their discharge and any legal responsibility to do so toward all the investors.)  This needs to be noted as it is the same disingenuous empty promises that contradict their behavior which we overall have experienced from the Bassett's. In response to this Denyce Spence said to Karen, "Then why are you filing for bankruptcy and putting us through this?!" and Karen said "It was the only way we could stop Bruce and Jeanine from driving us crazy. We are not giving up our bankruptcy." This from Karen and Larry is also showing unfair advantage towards some investors, post filing, although we have zero faith they will make any efforts whatsoever to repay anyone, family or not, if they receive this discharge. That has not been their interest. This favoring of some creditors over others also disqualifies them for any level of bankruptcy discharge. Which again brings us back to the fact that we do have much good cause to have our Vermont suit restored.

**727 (a) (4). This paragraph provides that the debtor cannot receive a discharge if:**

**The debtor knowingly and fraudulently, in or in connection to the case-**

(A) made a false oath or account
(B) presented or used a false claim;
(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property or advantage, for acting or forbearing to act; or
(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtors property or financial affairs.

**727 Paragraph (a) (3) states that a court may not grant a discharge if:**
**The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtors financial condition or business transactions might be ascertained, unless such act or failure to act**
**was justified under all the circumstances of the case.**

**727 (a) (5) requires a court to deny debtors discharge if "the debtor had failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtors liabilities."**

The Bassett's have both violated these as well, in many ways. Their original, first filing to the bankruptcy court said that their total liabilities were $50-100,000 in total, which is less than they owe us alone, let alone all the investors etc. This was filed under penalty of perjury and they lied and this is perjury. There are other false things reported in the 101 filing that are also perjury and that contradict their second filing, which had contradictions within itself alone and contained its own falsities. In the second filing of schedules, the account of their liabilities was more accurate yet still Larry reported what he owed us (Marshall and Weir), as a number less than he actually does owe us. At the first Creditors Meeting I, Bruce, walked Larry through the reality of what we are owed and he conceded to the facts of the situation with us. His misreporting of this, an undercutting of what he owes us, is further fraudulence and is perjury. Both Larry and Karen signed this. Larry on both his filings said he had not had any income in business, yet at the first

Creditors Meeting he did admit, when pinned down about his verbal and emailed promises to pay

us a percentage when freelance accounting work he was currently doing or had lined up, was

complete, yet we never had been paid anything from these promises since 2/2017, and Larry

conceded to this yet said we hadn't been paid on any of these jobs as he hadn't yet had a **profit**.

He said this under oath and the reality is this shows he was lying on what he filed to the court,

that he had retained paid freelance accounting work since 2/ 2017. You legally cannot fail to re-

port earnings from work because you haven't had a profit. Perjury. It also shows he was lying

under oath earlier when he had said he hadn't had any business earnings since 2/ 2017, until that

very month we found ourselves in at the Creditors Meeting. So again, perjury all. Further, Larry

gave us a spreadsheet of what investors were owed, (which he finally gave us after the leins were

put on their Vermont house a week before the house closing and we said we must finally have it)

and what all investors would be paid from the proceeds of the house sale. When you subtract

what Larry and real estate lawyer Fred Peet's escrow records say was paid investors from the

house sale proceeds individually and collectively (we told Larry a escrow had to be set up to pay

investors on house proceeds as a condition for release of our leins) and then calculate the amount

of money that would still be owed investors after the house sale, it is $1,637,191.47. (Larry had

claimed the total he owed all investors prior to the house sale was $1,770, 458.00, and the house

sale proceeds were $133,266.53, see **Exhibit C** ).Yet the total Larry said he owed the investors in

their second filing to the bankruptcy court, in Official Form 106A/B, is $1,223, 592.00. This is

far less than the numbers disclosed to us (Marshall and Weir) prior to the house sale and in

lawyer Fred Peet's escrow records (recently disclosed to the Trustee), which leaves $413, 598.47

unaccounted for in this bankruptcy filing. Under oath Larry and Karen both claimed no investors have been paid anything since the Vermont house sale, so either that is a lie and other investors have been paid since the house sale or they are lying about the total amount still owed investors (and they certainly lied in their 106A/B filing about what they still owe us—Marshall and Weir — gave a too low figure for what they owe us, which they may have done to other investors as well.) & if Larry wants to claim that some people "forgave" some of the debt he owed them, we want to know if the Bassett's reported this to the IRS, as legally they then need to pay taxes on that, it then becomes taxable income of the Bassett's. All of these records and contradictory numbers and spreadsheets (and there are other contradictions in other spreadsheets received from Larry prior to the house sale) do not make sense and this is a case that needs both much "discovery" and thorough FBI investigation, to discover the truth of what is still owed who, (in both original beginning principle and in earnings reported by Larry, as we know one or two in Vermont did recoup past their originally invested principle, over the years) and what exactly happened, where our money went, as many fraudsters do sequester away and hide and fraudulently transfer all sorts of assets and we have seen that the Bassett's were concealing things etc and we deserve more help to resolve this mess and have due process rights  and a chance at restitution. It can sometimes take authorities or others, years to find hidden assets of fraudsters yet they are sometimes found in time and we deserve, need and are owed such a chance.


& yes, Larry and Karen have  failed to explain satisfactorily the loss and deficiency of assets to meet their liabilities to investors. At Creditors Meetings in response to the Trustees asking questions about what happened to the investors money and all their significant assets generally (in-

herited etc, and very much money was going through their joint bank account including in
2/2017 when they told us the investors money was "lost" {stolen} and they were destitute, yet
their funds going both in and out of that joint account that very month came to $80,000, and they
had gone through such funds, 70-80k many months, over two years in what looks like money
laundering.) Larry gave many *I don't know*'s, there was much evasion, he said he didn't have
many records on money received from and paid out to investors, and since 2/ 2017 Larry has not
been willing to give us trading records, despite our May 15 contract giving us full financial dis-
closure. This is all extreme breach of fiduciary duty on Larry's part, toward us and all investors,
and Karen gave strong verbal commitments to us and other investors and then signed our May
15, 2017 contract in alignment with these promises, formally agreeing to her responsibility to us,
Karen put herself into a formal contractual position with us and thus indirectly with all the in-
vestors, due to the escrow provision that an escrow be used to repay all investors, she committed
herself in this as well and has violated her contractual, verbal, moral and legal commitments.

So "in connection to this case",  the debtor Karen made a false account in their official "Answer"
to our Vermont District Court complaint, in saying that **"With respect to Karen J. Bassett, the
Plaintiffs have failed to state a claim upon which relief can be granted because she never
had any contractual or other relationship with the Plaintiffs upon which a claim can be
founded."** (See **Exhibit D**.) Our Vermont suit did clearly delineate Karen's role contractually
and otherwise in the situation with us and under oath at the first Creditors Meeting Karen did
concede to these basic elements. She did admit to speaking to us after Larry gave us his news of
"loss" in 2017, that she had acted very sorrowful and apologetic over what Larry had done and
did commit strongly to work hard with Larry for our and all the investors repayment, and that she

did sign our May 15, 2017 contractual Agreement for release of the leins we had put on their

Vermont house.

They have not explained much and real answers will only be forthcoming from "discovery" and

a full FBI investigation etc. (Destruction of evidence is a crime, and the Trustee did warn Larry

that he must retain all records, and hopefully Larry has the hard drive of the computer he used

while trading.) Again, from all this and much more, all of which we cannot go into here, they are

not entitled to bankruptcy discharge and we are owed the restoration of our Vermont suit which

is necessary for our protection regarding funds we cannot afford the loss of, which is necessary

for our rights to be upheld.

**The Constitution of the United States, Article IV, Section 2:**

**"The citizens of each state shall be entitled to all Privileges and Immunities of Citizens in
the several states.**

**A person charged with a crime in any state with treason, Felony, or other Crime, who shall
flee from Justice, and be found in another State, shall on Demand of the executive Authori-
ty of the State from which he fled, be delivered up, to be removed to the Sate having juris-
diction of the Crime.**

**No Person held to Service or Labour in one State, under the laws thereof, escaping into an-
other, shall, in Consequences of any Law or Regulation herein, be discharged from such
Service or Labour, but shall be delivered up on claim go the party to whom such Service or
Labour may be due."**

Larry and Karen have committed crimes yet have not been as of yet charged with a criminal level

crime, yet have been facing civil crime/tortious charges, civil fraud (and breach of fiduciary duty

etc) charges in Vermont. This legally is securities fraud with a large sum of money owed numer-

ous people and this is a felony. Larry and Karen left quickly for Texas (after Larry's confession

to us) to evade things here (and had we not put the leins on their Vermont house and insisted on

an escrow for the payment of investors, as a condition for the release of the leins, we have no

idea if any investors would have actually been paid from the house proceeds. Perhaps they would

have been but we were and remain skeptical, particularly when Larry emailed us that we could

meet in the parking lot across from the mortgage company after the house closing, to pick up our

check at their van—which on the phone he said would be packed and ready to leave for Texas

after the closing. This did not elicit much trust.) & then they filed for bankruptcy in Texas, in a

further attempt to evade things here with our Vermont civil suit, to stop it and erase their legal

responsibility to us and all the investors. We have the constitutional right to have our civil case

continued in Vermont, to add on the causes of action we were about to (in amending our com-

plaint) before the Bassett's filed for bankruptcy in Texas (securities fraud, wire and mail fraud),

and to have a trial on the merits of our case.

## Curtis Factors

### In terms of Curtis Factors, derived from In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (See also In re Plumberex Specialty Products, Inc., 311 B.R. 551, 560 (Bankr. C.D. Cal. 2004),

The 12 factors being:

### 1) "Whether relief would result in partial or complete issue resolution"

It would bring us trial on the merits and hopefully fruits of justice in the form of a court judge-

ment. Partial resolution for us although this case must go to the FBI for full investigation and

eventually to a Grand Jury. This case is not resolvable in bankruptcy court. Investors as a whole

absolutely cannot have the debts owed them, debts accrued from fraud (including securities

fraud) and from breach of fiduciary duty, discharged, this would be unlawful and would be the

government aiding and abetting fraud.

## 2) "The lack of any connection with or interference with the bankruptcy case"

The connection with the bankruptcy case is that the Bassett's are using bankruptcy court to fur-

ther their fraud, in seeking to erase responsibility for debts accrued through fraud, and to stop our

Vermont civil suit for fraud and the discovery we were going into, and they have no right to go

forward criminally with this, with what is bankruptcy fraud. Their bankruptcy case has no legs to

stand on, is littered with perjury and ill intent, they are far from honest debtors (which bank-

ruptcy discharge is designed for, honest debtors) and are in no way entitled to this discharge in

any way, shape or form.

## 3) "Whether the other proceeding involves the debtor as a fiduciary"

Yes, it does, as Larry is a CPA and was entrusted with funds critical to our future and very much

breached his fiduciary duty, as outlined in our Vermont court complaint, and this defrauding

would not have occurred had Larry honored honestly and professionally this fiduciary responsi-

bility toward us and the other investors. Further, considering that Karen told us  and other in-

vestors that she was going to work hard with Larry to repay us and all the investors, that they

were so sorry and committed to this repayment which "would likely take about 5 years but

maybe longer", and then in a seal on these verbal commitments (promissory estoppel) Karen

signed our May 15, 2017 contractual Agreement for our repayment, yet Karen has not followed

through on this contractual agreement and this extension of trust, which is also a breach of fidu-

ciary duty. Karen has not been sincere and has played out this deceit hand in hand with Larry, at least since February 2017. We saw that their house was actually put on the market in 2016, months before we were ever told of Larry's "loss" & we certainly have no proof as of yet that Karen knew nothing of Larry's fraud prior to his "loss" of all our money (as they've claimed), that has yet to be determined and needs full "discovery" and FBI investigation. In one of the Creditors Meetings Larry told the Trustee he had "lost" all the investors money a year before we all were so informed, so when exactly Karen knew things is unclear. Further, in the May 15 nota-rized contractual agreement Karen and Larry both signed, it was agreed we would be put on their life insurance policies as beneficiary (in case both the Bassett's were to die prematurely before we had been fully repaid.) The signed insurance promissory note Larry sent a month later includ-ed a life insurance policy of Karen's, and when we discovered that Bruce was not actually listed as beneficiary on these policies and it had simply been a continuation of, a furthering of the fraud, we contacted Larry and Karen about this, as did one of the insurance companies, yet they both chose not to respond. Karen has her own responsibility here for breach of fiduciary duty and fraud.

*"A fiduciary is someone who has undertaken to act for and on behalf of another in a particular matter in circumstances which give rise to a relationship of trust and confidence."*
— Lord Millett, *Bristol and West Building Society v Mothew*

### 4) "Whether a specialized tribunal with necessary expertise has been established to hear cause of action"

We don't know but assume not and Bankruptcy Court is not the right jurisdiction and venue for this case, the look back period etc is too short and limited and due to many other factors dis-cussed in this motion, we do not agree to adjudication of our case in this court, outside of with

these motions, yet generally adjudication and jurisdiction we do not consent to at bankruptcy

court and final judgement for us with this case will be in Vermont District Court, by jury trial.

This is the wrong venue and jurisdiction for the Bassett case **with all the investors**, Bankruptcy

Court is inappropriate for this and this case must be strongly referred to the FBI, they must do a

full investigation and in time it needs to go to Grand Jury, for all the many reasons outlined in

this motion (and far more.) The Bassett's legally have no standing for and no right to any level of

discharge in this court.


### 5) "Whether the debtor's insurer has assumed full defense responsibility"

We don't think so. If Larry has had any CPA insurance is one thing we'd like to know yet a num-

ber of lawyers told us way back that since this is clearly a fraud case, even if Larry had CPA in-

surance they would be very unlikely to pay for fraud damages, that they don't pay out for fraud.


### 6) "Whether the action primarily involves third parties"

No, not primarily.


### 7) "Whether the litigation in another forum would prejudice the interests of other credi-tors"

No it would not, and other investors we have talked to were sorry our suit was put on

"stay" (hold) by the Bassett's filing, and an attack on one of us disenfranchises us all. Our having

our suit restored and a trial on the merits of the case, with hopefully a resultant court judgement

securing our rights, would be a positive precedent for other investors, would be a positive step to

securing others rights as well.

As we said, this case needs to go to the FBI, Bankruptcy Court is the wrong jurisdiction and

venue for this and it thus needs to be fully dismissed from Bankruptcy Court and eventually go

to Grand Jury. After the case being dismissed from Bankruptcy Court any other investors can file

civil suit who wish to. We encouraged other investors who we were aware of at the time, to file

their own lawsuits, prior to the Bassett's bankruptcy filing. With lawyers it is expensive and go-

ing Pro Se it is time consuming, so people do balk at the prospects yet if we get a court judge-

ment this would be a securing step that would be beneficial toward the other investors (and

would make it easier for them in a civil suit to secure their claim of funds owed them.) Our hav-

ing our Vermont District Court case restored, with trial on the merits of the case and hopefully

with a court judgement resulting, would help strengthen and solidify any investors legal standing

and create greater ease in their cases, with our case to cite as precedent and a time sequenced

record of events with the Bassett's in this case.

Our suit is not a disadvantage to the other investors as the Bassett's being in Bankruptcy Court is

of no advantage to any of the investors and will only bring any and all of us harm, in having the

Bassett's legal and ethical responsibilities to us destroyed and their fraud furthered to the point it

seems they always wanted to take it——that people either give up, or the statute of limitations

runs out, or an investor files suit and bankruptcy is filed for to "stay" it and then erase all their

fraud debts that way. What tons of fraudsters do and plan on and the Bassett's have turned out to

be another garden variety fraudster team. If the Bassett's bankruptcy case is dismissed they are

free to divvy up their mineral rights assets among investors, as they are contractually bound to

and were free to for a long time, yet they have not wanted to do that and have only continued to

seek to have this small amount of long concealed assets, exempt from being divided among cred-

itors. What is any of the investors genuine benefit in bankruptcy court? There is none, only more

abuse from the Bassett's in a case that no ethical lawyer would have touched with a ten foot pole.

& no, we do not believe the Bassett's are being forthright that they have no other assets, they hid

plenty before and we do think things are hidden somewhere and there are various signs of such,

and even though it sometimes takes a very long time, eventually sometimes things are found in

fraud cases  (by the FBI or other agencies and avenues) and restitution does come. We (Bruce

and Jeanine and all the investors) deserve, need and are legally owed such a chance, in what has

been a profoundly traumatic and exhausting situation.

Further, a number of investors have not been willing to talk to/communicate with us (for reasons

such as already having been defrauded of funds by a fraud —the Vermont Mack Parker case—

and  being unwilling to waste any more of their time running after fraudsters, as it is so often

time consuming and harrowing) and while we understand this and that of some people's reasons

we cannot be held back from the restoration of our suit by any possible oblique claims from the

Bassett's of "harming other investors" when some investors haven't even been willing to talk to

us and we don't understand the details of their cases, and Larry and Karen were not willing to let

us be in touch with other investors when we requested such in February 2017, and the overall

picture is very clear and simple: The Bassett's defrauded the investors, much about what hap-

pened to our money (collectively and individually)  is unknown and the case needs full investiga-

tion via "discovery" and the FBI etc, and eventual Grand Jury trial, and we have worked hard to

try to secure our rights for funds critical to our future and are owed  the restoration of our suit

and a trial on the merits in Vermont District Court, a court judgement from which will only be

beneficial to the true and actual interests of all investors.

**8) "Whether the judgment claim arising from the other action is subject to equitable subordination"**

This  does not at all apply to our situation with the Bassett's.

**9) "Whether movant's success in the other proceeding would result in a judicial lien avoidable by debtor"**

The Bassett's should not be able to avoid anything of the sort as they are base criminals who

have hurt numerous people quite severely and are owed zero, none, nada discharge by the court,

and would only receive such discharge if the court itself decided to go down a very dark and ne-

farious road that should not be taken under any circumstances.

**10)  "The interests of judicial economy and expeditious and economical resolution of liti-gation"**

If you want judicial economy, lift the stay on our case, **do not allow interference with** our Rule

2004 Examination with Production of Documents Motion (which we are owed, the Bassett's  in-

terfered with our "discovery" in Vermont in filing for bankruptcy and all the investors are owed

this needed information, to find necessary critical answers; a number of us in Texas and Vermont

are wanting it.) If you want judicial economy and so forth, then secondarily, do not allow inter-

ference with our Motion for a Time Extension for filing necessary documents—– and then have

the Bassett's entire bankruptcy case dismissed out of bankruptcy court, as soon as possible. If

you truly want judicial economy and expeditious and economical resolution of litigation in bank-

ruptcy court that is the best and lawful, ethically sound way to go. If you do not do a full dis-

missal of their case out of bankruptcy court as soon as we receive or are assured Rule 2004 "dis-

covery" information, we will take matters into our own hands to appeal for such very overtly

ourselves, yet there is really enough information on this case that it should be booted out the door

very quickly. Pronto. The Bassett's have no right to this.

## 11) "Whether parties are ready for trial in the other proceeding"

We will be ready for a trial on the merits of our case relatively soon, but much sooner if we are

given what we need via the Rule 2004 Examination—Production of Documents, and relatively

quickly, and legally we must be given this information. The Bassett's contractually agreed to our

having "full financial disclosure" (in the May 15 notarized agreement) which means just that and

no less. & due process is and remains due process.

Again, the Bassett's interfered with our receiving "discovery" in our Vermont suit by filing for

bankruptcy and we have need of the Rule 2004 Exam by Production of Documents for such "dis-

covery" with needed trading records etc, and then rather soon we will be ready.

## 12) "The impact of the stay on parties and balance of harms"

The impact on the parties of the lifting of the "stay" on our Vermont Court case, would be a turn

toward justice in a situation that has caused us extreme trauma and financial loss which we can-

not afford and is critical for our future solvency and survival, especially in dealing with serious

chronic illness. We have been very hurt by the stay put on our case, we put a ton of work into our

Vermont case and cannot be disenfranchised by its loss. We have the need to be able to protect

ourselves in this critical way. Other investors in the case also have been seriously financially

harmed and traumatically hurt in various ways by the criminal, guttural level debasement which

has occurred, a vicious and deliberate defrauding that occurred for how long back in years we do

not currently know, yet has **continued** in a consciously chosen way the past 27 or so months with Larry and Karen as a team in unconscionable conniving and sharkery.

Again to reiterate, fraud accrued debts are not dischargeable in bankruptcy and those who commit bankruptcy fraud, fraud on the court, lie in their filings which are signed under oath and penalty of perjury and lie in speaking under oath at Creditors Meetings, which is perjury, and who also admitted under oath to what is legally fraud and fraud of a very serious sort, who admitted to what is legally misrepresentation to investors, in Larry telling us when we first contacted him that he had a record of earnings in trading of 13-15%, which he had been getting long term, for many years (15 or so) which at a Creditors Meeting he said was not so, said he was having losses for many years, and pre investment Larry had said he had a low risk conservative approach to trading and "This is my families money, I would not risk it" which it turns out was not so, he was willing to risk their money, and said under oath he had been having losses in trading long before the time we ever invested, and in the fraudulent inducement of this with the earning reports and IRS 1099 INT's he gave us that he said under oath he had been falsifying, reporting fake earnings, all of which is fraudulent misrepresentation, fraudulent inducement, securities fraud, tax fraud, wire and mail fraud, breach of fiduciary duty and breach of contract, and more… which all together means they are not entitled to any level of discharge. As it is said in Bankruptcy Court, discharge is for the honest debtor.


Larry was inducing people to feel safe with his trading and with giving him money, to feel safe with not pulling all their money out immediately, with and due to these false reports and many verbal assurances as well. I, Bruce, worked to keep in frequent contact with Larry after we were

invested, to be sure all was well, as we could not afford the loss of this money and I would have pulled out at signs of faltering. Others surely would have as well, and had Larry been honest many people likely would have pulled out their money long ago and this may have upset Larry, to no longer be able to **"gamble"** in trading, (the word he used when he first informed us of the "loss") to try to make funds back and try again, yet at least people would not have had large losses and Larry would not have compromised his integrity so severely and would not be now facing significant charges.

Further the Bassett's have long promised us and the other investors full repayment and they have found it acceptable to themselves to do practically nothing for that commitment, and it has not been established that this repayment would cause them an undue hardship, yet it is established that the lack of repayment from their stealing would cause a number of investors severe undue hardship. The Bassett's have not been working much (not for investors anyway, for themselves they may have been doing a ton) or given evidence of a real honest try or actual significant work, any real thought to it whatsoever, have simply lied and evaded us, given fanciful stories to us and the other investors, and they both are needing to learn what responsibility, accountability and significant work actually are. If the Bassett's had been serious they would not have sequestered themselves off in an isolated area far from where the full time accounting work Larry had promised he was looking for, would be much more likely to be found, and skilled help and resources to start businesses as well, as they both had also promised, and never did Larry send a serious or any business plan at all. Raising a few pups and doing a few lawns and house cleaning jobs is not serious business strategy when you owe money you have defrauded people of to the

tune of well over a million dollars, nor is it ethical or legally justifiable when you have professional abilities that can accrue significant funds.

Many people work quite hard to pay off their debts, to give an honest real try of doing their best, and many people try as such with debts that have nothing to do with fraud and were not dishonestly accrued. Many people work hard as a matter of course just to pay their rent. Many people engage in full time work in their field or a new one into their seventies and eighties and older, either because they enjoy it or because they have the financial need to do so. Larry begeted debt from stealing and yet both Larry and Karen, after all the crocodile tears and their words of remorse and promise, have nary to pick up a real finger and get to work for seriously hurt (and emotionally traumatized) people's repayment, they have concealed assets, lied to us about being "destitute" when they were not, fraudulently transferred assets in avoidance of investors repayment, and simply la di da-ed along in an all too apparent laksidasical underhanded brutal disregard of the old fraudster "laying low until the dust settles, we get a discharge and fully shirk off our criminally created debts" game plan that numerous fraud and financial crime seasoned lawyers and private investigators had warned us was the route taken by many fraudsters, which has unfortunately turned out to be so in this case.

For a true "rehabilitation" as Bankruptcy Court talks about with debtors, the Bassett's are needing to face their accountability and find some honesty in their lives, not to be enabled in bloodthirsty swindling. Allowing the stay to remain would simply help the Bassett's become further

entrenched in their criminality and very ill entitled mindsets, as the more fraudsters get away

with, the more they tend to repeat such crimes.

After Larry's confession to investors about the "loss" of our funds, he never even called investor

Jewel Hutson to tell her what had happened, Jewel being an 80 year old who had invested

$300,000 in life savings from her and her husbands lifetime efforts. Larry relied on her daughter

to tell Jewel (who was also invested) and Larry and Karen never even once called her to apolo-

gize, and to say directly to her that they were going to work hard for her and everyone's repay-

ment. Larry never returned any of her phone calls, all this time since February 2017; Jewel

would call and he did not return her calls, not once. This is is grave breach of fiduciary duty and

cruel, barbaric, ruthless behavior of the Bassett's and shows how disingenuous they were, as had

they been sincere in wanting to repay investors and feeling genuine remorse and desire to

change, to have true redress and come to conscience in the situation which equates to actually

working hard and making actual sacrifice to be honestly frank, transparent and straight shooting

in their dealings with investors, then Jewel would have been called, originally in February 2017,

and numerous times thereafter. Jewel has been very hurt by this and not only financially and this

abuse must stop.

This bankruptcy discharge would be very destructive to investors and would be destructive to the

Bassett's, who are needing to learn some lessons or they will continue with some severe psycho-

logical imbalances and would be further enabled to continue defrauding other people, as fraud-

sters often do if not checked in their criminal conceptions and with the Bassett's, in their toxic

sense of entitlement.


Further, in our Vermont case we did ask for treble damages due to the extreme level of trauma

and non stop all consuming work the Bassett's fraud has created for us, in having to intensively

seek new avenues of possibilities for the return of our funds, constant studying of the law, talking

to private investigators, lawyers, certified fraud examiners and related professionals familiar with

fraud and white collar financial crimes, etc. We have long been exhausted by this, it has been far

more than full time work and has left so much neglected and lost in our lives. It has only been

worsened by their filing for bankruptcy which has forced us to study bankruptcy law, which

seems more veiled and harder to decipher than other law and this exhausting and traumatic tra-

vail of needing to be our own Pro Se counsel in a situation that has been incredibly exploitive,

needs to be stopped. We do have the right to the treble damages payment, there has been personal

injury here as we spin through our money and lives, so much wasted time as we give focus to

this case. There has been infliction of emotional distress and the Bassett's have known what they

are doing, it is deliberate and intentional. The Bankruptcy Court does not have jurisdiction or

adjudication over these non core issues (such as personal injury and civil fraud as well as securi-

ties fraud, breach of fiduciary duty, perjury and more) and we must have our Vermont case back.


It would be in all parties best interest for us to resume our Civil Suit in Vermont, which would be

for the general good, as has been explained, and the case has already begun and we need to con-

tinue and come to closure with it. Even if it took the FBI or another avenue 10 years to possibly

find hidden assets of the Bassett's, it is possible and we are owed this.

The reality is that if we are not allowed the restoration of our Vermont suit which we put so much

time and labor into and for which we had to pay a filing fee (and a fee to motion to lift the stay) it

would then be taking our private property and labor without compensation, and such a loss is not

at all easily compensated, it is not actually replaceable, as this is a suit that can secure our rights

and would really be about the loss of due process, our very rights and an avenue towards future

solvency and relief from throat slitting crime.

We want a trial on the merits and likely jury trial in Vermont and do not agree to adjudication of

the bankruptcy court with our case. We do not submit to the bankruptcy court's jurisdiction over

our case, we do not consent to its adjudication there. Yes, things from our motions need to be at-

tended to and we are grateful for that yet we do not consent to adjudication for non core issues

and for a final judgement at bankruptcy court or for general adjudication there with our case (be-

yond what our motions elucidate), we want and have need of a jury trial, a trial on the merits of

our case and final judgement in the District court of Vermont, in our home state and where our

case has been that we worked so hard on, in the place (Vermont) that the FBI says has jurisdic-

tion in the case since the meat of the fraud happened here, and it is where we live and where the

fraud has happened to us. We should not have to be further disenfranchised having to run off to

Texas. & of course a Grand Jury is really needed for this case and is adjudication we further seek

and insist upon for our sake and all the investors involved. As again, this is a very detail laden

case in which much has not yet been fully investigated, there are so many unanswered questions that must be answered for true justice and due process to be given the investors. Bankruptcy court is really the wrong venue period, the wrong jurisdiction for this case. Without full and very thorough "discovery" and FBI investigation how can we really know if any of the investors may have been involved in this fraud, what all other investors are really owed, why Larry's spreadsheet/disclosure numbers and explanations as to what/how much people have been repaid, are so contradictory and illogical and questions as to where the investors money actually went, what all their joint bank account credits and expenditures meant and went to, (which look like money laundering), etc, as Larry and Karen's word is certainly not trustworthy or forthcoming and ultimately we do not know what really happened with our funds and Larry's trading (or if he really "lost" any of it or simply transferred it elsewhere and claimed it was lost in trading), if Karen knew all along, and there are many more questions we have due process rights to get to the bottom of, and which make bankruptcy court the wrong jurisdiction and which makes the Bassett's (even further) not entitled to discharge. Again this case involves **non core issues** of civil and criminal fraud and it is an extremely detailed situation with many issues to be assessed, a severe fraud with records, claims of significant earnings and fiduciary responsibilities going back over 15 years. The limited scope of and investigation in bankruptcy court, which only looks back 90 days, a year or two, is totally inappropriate and is the wrong jurisdiction and venue for this case. The fact that we know from what Larry and Karen admitted under oath, that legally this is securities fraud, accounting fraud, mail and wire fraud, and that fraud and embezzlement while acting in a fiduciary capacity further makes it not dischargeable debt, thus nothing owed investors can be discharged. Securities fraud is a felony and debts accrued from securities fraud, (which all the

debt owed investors was legally) are not dischargeable in bankruptcy. Thus nothing else is appropriate or just but full FBI investigation, the recovery of our Vermont suit, full dismissal of the Bassett's case from bankruptcy court, which creates an opening for any investors who may wish to file their own civil suits and "secure" their debt, and eventual Grand Jury trial.

Further, we ask that if any hearing is needed over this motion, or any of our other motions, that we be allowed telephone attendance since we live in Vermont. We ask that if there are any deadlines for filing this motion or having a hearing on this or any of our other motions, that we are unaware of as we have not been able to find record of such, that we be given a time extension if such would be needed to secure our rights.

**The United States Constitution, Article I, section 10, clause 1:**

**"No State shall...pass any law impairing the Obligation of Contracts..."**

Our contracts with Larry and Karen must be honored as constitutionally they stand and cannot be flushed away in bankruptcy discharge, and we have the right to the restoration of our Vermont suit and trial on the merits regarding these contractual obligations and the overall situation with fraud, breach of fiduciary duty, etc. Before the Bassett's filed and stayed our case we were about to amend our court complaint to add the causes of action securities fraud, wire and mail fraud, and we have the right to this as well.

**From U.S. Code 1981. Equal Rights Under The Law:**

**(a) STATEMENT OF EQUAL RIGHTS**
**(b) All persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts, to sue, be parties, give evidence,**

**and to the full and equal benefit of all laws and proceedings for the security of persons and property...and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.**

## 42 U.S. Code § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)

We have the right to our Vermont civil proceeding for redress and thus a lifting of the stay. Other investors likewise have the right to have a chance at civil redress if they so choose, which means this case that is so completely inappropriate for bankruptcy discharge, should be dismissed fully out of that court, no discharge allowed.

## (2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection

of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

### (3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
(R.S. § 1980.)

### 42 U.S. Code § 1986. Action for neglect to prevent

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

(R.S. § 1981.)


## From The Declaration Of Independence:

*"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, --That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness. Prudence, indeed, will dictate that Governments long established should not be changed for light and transient causes ; and accordingly all experience hath shewn, that mankind are more disposed to suffer, while evils are sufferable, than to right themselves by abolishing the forms to which they are accustomed. But when a long train of abuses and usurpations, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism, it is their right, it is their duty, to throw off such Government, and to provide new Guards for their future security..."*


This is to say, that having experienced the extreme difficulty people face who have been severely defrauded and do not have millions to outsource the work of recouping funds, who have had to work nearly nonstop to study the law, to become their own private investigators, to constantly seek possibilities for redress and write their own Pro Se complaint and other legal papers and pleas for help, we cannot accept any further loss of our unalienable rights, which are sacrosanct in our Constitutional Republic.

We further cite all the documents of our founding fathers, which are the foundation and crux of all law to which all lawyers and courts are beholden in this country.

**Bruce Marshall  &  Jeanine Weir**
Pro Se
P.O. Box 45, Rochester, Vermont, 05767

38            5/11/2019

# Proof of Service

On May 13, 2018, Bruce Marshall & Jeanine Weir, P.O. Box 45 Rochester, Vermont 05767 sent by at least First Class Mail:

**Motion for to Lift Automatic Stay**
**Amended Motion to Extend Deadline for Filing Objections to Discharge or Dischargability and to File 707 (b) Motions to Dismiss**

Both Motions were sent to the Matrix List per the Basset Bankruptcy Petition 19-20023 in the Eastern District of Texas, Marshall Division,

Larry Bassett & Karen Bassett
10282 Sheep Road Pittsburg, TX 75686-7025

Chase Bank USA,N.A.
c/o Robertson, Anschutz $
Schneid, P.L. 6409 Congress Avenue, Suite 100
Boca Raton, Florida 33487-2853

IRS
PO BOX 7346
Philadelphia, PA 19101-7346

Jn Portfolio Debt Equities, LLC Attn: Bankruptcy
5757 Phantom Dr. STE 225
Hazelwood, MO 63042-2429

William H. Lively Jr. WHL, PLLC
432 S. Bonner Ave. Tyler, TX 75702-8033

Midland Funding
2365 Northside Dr Ste 300 San Diego, CA 92108-2709

Office of the U.S. Trustee 110 N. College, Ste. 300 Tyler, TX 75702-7231

Barclays Bank Delaware Attn: Correspondence
PO Box 8801
Wilmington, DE 19899-8801

Blaise Ahrens
3610 Private Road 2739
Uvalde, TX 7580

Chase Card Services
Correspondence Dept
PO Box 15298
Wilmington, DE 19850-5298

Jennifer Fisher 2109
Rockwood Cir Bryan, TX 77807-2714

Richard E Klein
121 Adams Ferry Rd
Panton, VT 05491-9383

Nicholas W. Shelly
122 Calebs Way
Bastrop, TX 78602-7499

Portfolio Recovery
PO Box 41021
Norfolk, VA 23541-1021

Rebecca Shelly
1751 CR 411
Lexington, TX 78947-4955

Sallie Mack
2035 Greenbush Rd Charlotte, VT 05445-9652

Bruce Marshall & Jeanine Weir
PO BOX 45
Rochester, VT 05767-0045

Hollins & Denyce Spence
4464 CR 314
Rockdale, TX 76567-5005

Jewel E. Hutson
9161 Hwy 77 N Lexington, TX 78947-9643

Larry & Judy Spitzenberger
4203 N Hwy 77
Giddings, TX 78942-6422

Michael McNally
100 E. Ferguson, Suite 400
Tyler, TX 75702-5758

Office of the Attorney General Child Support Division
3520 Robertson Road, Ste. 501
Tyler, TX 7570

Primeway Fcu
Attn: Bankruptcy
PO Box 53088
Houston, TX 77052-3088